UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUNAZZA KHAN<br>d/b/a Super Buy Food Store,<br>      *Plaintiff*, | §<br>§<br>§<br>§ | |
| v. | § | CIVIL ACTION H-05-0947 |
| UNITED STATES OF AMERICA,<br>      *Defendant*. | §<br>§<br>§<br>§ | |

**MEMORANDUM AND ORDER**

Before the court are the cross motions for summary judgment of the plaintiff, Munazza Khan, d/b/a Super Buy Food Store (Dkt. 15) and the defendant, the United States of America (Dkt. 14). After reviewing the motions, the responses[1], and the applicable law, the court concludes that the motion for summary judgment of the defendant should be granted and the motion for summary judgment of the plaintiff should be denied.

**Statement of the Case**

This is an action brought by the plaintiff to challenge decisions of the Food and Nutrition Service ("FNS") of the U. S. Department of Agriculture denying the plaintiff's application and amended application to participate in the Food Stamp Program as an authorized retail food store. The applications were denied on the grounds that the plaintiff had previously been permanently disqualified from participating in the Food Stamp Program as a result of illegal trafficking in food stamp benefits.

---

[1] The defendant filed a response to the plaintiff's motion for summary judgment (Dkt. 18), but the plaintiff chose to simply resubmit her memorandum in support of her motion for summary judgment restyled as a response (Dkt. 19).

**Contentions of the Parties**

The defendant contends that the plaintiff's application to participate in the food stamp program and the plaintiff's amended application were both properly denied by the FNS because the plaintiff had been permanently disqualified from participating in the Food Stamp Program in connection with a store at a previous location. (A.R. at 95 and 116.)

The plaintiff does not deny that she was permanently disqualified from participating in the Food Stamp Program in 1993, but she contends that she never received notification of that disqualification. She claims her due process rights have been violated and that the 1993 disqualification should be expunged and set aside. She also claims that she should not be charged for the conduct of her co-owners of the store at the previous location which, she says, occurred without her knowledge.

**Legal Standard**

1.  Pursuant to 7 U.S.C. § 2023(a), district courts must conduct a "*de novo* review of administrative actions concerning the eligibility of stores to participate in the food stamp program." *Abdelkhalik v. United States*, 1996 WL 41234 at *2 (N.D. Ill.)(citing *East Food & Liquor, Inc. v. United States,* 50 F.3d 1405, 1411 (7th Cir. 1995)). The plaintiff has the burden of showing that "the alleged violations of the Food Stamp Act and its regulations did not occur." *Id*. The FNS's decision "must be upheld unless [the plaintiff] can show by a preponderance of the evidence that the decision is invalid. *Id*. While the district court determines *de novo* the validity of the FNS's determination that a violation occurred, the FNS's decision should be set aside only if it is "arbitrary and capricious." *Id*. In other words, a district court should not set aside the determination unless it is "unwarranted in law" or "without justification in fact." *Id*.

2.  Under Rule 56(c), summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c).  In ruling on a motion for summary judgment, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986).

       3.      Pursuant to 7 CFR § 278.6(a), a firm may be disqualified for violating food stamp regulations. *Abdelkhalik, supra*, 1996 WL 41234 at *4. The "disqualification shall be permanent for . . . a disqualification based on trafficking . . . ." *Id*. It is not required by the regulations that a store owner "receive a warning, intend to violate the regulations, or benefit from the trafficking" prior to the disqualification. *Id*. citing *Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir. 1993).

       4.      The Food Stamp Act punishes violations committed by the store, regardless of the alleged innocence or ignorance of the store owners. 7 U.S.C. § 2021(b)(3); *Abdelkhalik*, 1996 WL 41234 at *5 ("To allow store ownership to disclaim accountability for the acts of persons whom the ownership allows to handle the checkout register would render virtually meaningless the enforcement provisions of the Food Stamp Act and the enforcement efforts of the Department . . .").

       5.      A permanent disqualification is appropriate even in situations where the store owner is completely innocent, i.e., the store owner apparently did not know about the purchases of food stamps, did not participate in those purchases, and did not benefit from those purchases. *Kim v. United States*, 121 F.3d 1269 (9th Cir. 1997); *Traficanti v. United States*, 227 F.3d 170 (4th Cir. 2000).

**Facts**

1.     In 1992, QKR Enterprises, Inc. d/b/a Main Stop Food Mart was authorized to participate in the Food Stamp Program. Corporate documents submitted with the application showed that the plaintiff and her husband, Ghulam Mustafa Khan, were 24.5% shareholders in QKR Enterprises.

2.     An investigation undertaken by the FNS Food Stamp Program in 1992-93 found several program violations, including two transactions by a clerk, identified as Ghulam Khan (husband of the plaintiff). Mr. Khan was identified as having paid an investigator, on two separate occasions, $50.00 cash in exchange for food stamp coupons valued at $100.00.

3.     In 1993, as a result of this investigation, the owners of Main Stop Food Mart were charged with violations of the Food Stamp Program. By letter dated March 22, 1993, the owners were then <u>permanently</u> disqualified from participating in the Food Stamp Program. The plaintiff was specifically included by name on that correspondence from the FNS. Subsequent correspondence from the FNS indicates that the plaintiff's husband, Ghulam Khan, who was shown as a vice president of QKR Enterprises, Inc., had actual knowledge of the permanent disqualification, and requested and obtained an administrative review of the permanent disqualification. This administrative review affirmed the permanent disqualification of the plaintiff and others.

4.     By application dated June 1, 2004, the plaintiff, her husband, and partners Asim and Rukhsana Hamid[2] once again sought approval to participate in the Food Stamp Program as the owners of the Super Buy Food Store located at 527 Barren Springs, "B," Houston, Texas.

5.     In Part II, Paragraph 12 of the application, the applicant was asked whether the owners had previously participated in the Food Stamp Program, and whether the owners had ever

---

[2] All four were shown as prior owners of the previously disqualified store.

previously been disqualified from participation in the Food Stamp Program. Both questions were answered "no."

6.      This application was denied by letter dated June 9, 2004. The denial was based on the fact that the owners were permanently disqualified from the Food Stamp Program in 1993 in connection with their ownership of the Main Stop Food Mart. An additional reason was that the owners had failed to answer "yes" to the question about a previous disqualification. This new store was therefore found to be a "replacement store" for the Main Stop Food Mart, where several Food Stamp Program violations had occurred in 1992.

7.      Both the plaintiff and Asim Hamid requested review of the Adverse Agency Action. The plaintiff attached affidavits from both herself and Asim Hamid, claiming that they should not have been disqualified from the Food Stamp Program because they were not really owners of the Main Stop Food Mart.

8.      On June 21, 2004, the plaintiff submitted an amended application to the Food Stamp Program. This application was signed by the plaintiff. The store owners were listed as Munazza Khan and Ghulam Khan (spouse), and Ghulam Khan was identified as the store manager.

9.      The plaintiff and her husband again denied that they had previously owned or operated a retail food store that participated in the Food Stamp Program or that they had ever been disqualified from participating in the program.

10.     By letter dated June 23, 2004, the plaintiff's amended application was denied because the plaintiff was permanently disqualified from participating in the Food Stamp Program.

11.     The plaintiff requested an administrative review of both denials. This administrative review also resulted in denial. The plaintiff then filed this appeal.

**Discussion**

In this case, it is undisputed that the plaintiff was permanently disqualified from participating in the Food Stamp Program in 1993 based on her ownership interest in Main Stop Food Mart.

The plaintiff's name was listed on the letter of disqualification from the Food Stamp Program and the plaintiff's husband, Ghulam Khan, requested and obtained an Administrative Review of that decision. No request for judicial review of the reviewing officer's final determination was filed and that permanent disqualification is now final and not before this court. 7 U.S.C. § 2023(a)(13) and 7 C.F.R. § 279.7.

The court finds that the decisions to deny the plaintiff's application and amended application to participate in the Food Stamp Program for a new store were valid, were not arbitrary or capricious, and were based on substantial evidence.

**Conclusion**

Therefore, the motion for summary judgment of the defendant is GRANTED. The motion for summary judgment of the plaintiff is DENIED.

Signed at Houston, Texas on October 31, 2006.

_____
Gray H. Miller
United States District Judge